IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIAN N., NICOLE N., and NICHOLAS N.,<br><br>Plaintiffs,<br><br>v.<br><br>COVENTRY HEALTHCARE OF NEBRASKA, INC. and MHNET BEHAVIORAL HEALTH,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:17-CV-1128 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on cross Motions for Summary Judgment. For the reasons discussed below, the Court will grant Defendants' Motion and deny Plaintiffs' Motion.

I. BACKGROUND

Plaintiff Nicole N. ("Nicole) was a participant of the Granite Transformations health benefit plan (the "Plan"), an employee welfare benefit plan governed by ERISA. Nicole's son, Nicholas, was covered under the Plan. Nicholas was admitted to Catalyst Residential Treatment Center ("Catalyst") on August 22, 2014. Catalyst is a residential treatment facility providing mental health care to adolescent boys who have been diagnosed with mental health or substance use disorders.

Plaintiffs submitted claims for Nicholas' treatment at Catalyst and Defendant denied the claims because Plaintiffs had not obtained prior authorization for Nicholas' treatment. After two levels of appeal and a review by an independent third-party reviewer, Coventry maintained its denial of coverage. Plaintiffs now seek review.

1

A.   THE PLAN TERMS

The Plan includes various prior authorization requirements. Prior authorization means the "[v]erification of Medical Necessity by the Health Plan, for certain services, supplies, equipment, drugs or procedures to be received by a Member."[1] Relevant here, the Plan states, "[i]f Your Agreement provides Coverage under a Mental Disorder and Substance-Related Disorder Rider, Prior Authorization must be obtained from the telephone number listed on Your ID card."[2] The Plan goes on to warn that the "[f]ailure to provide sufficient notice or to obtain Prior Authorization when required may result in reduction or denial of benefits."[3]

B.   NICHOLAS N.'S TREATMENT AT CATALYST

Nicholas was admitted to Catalyst on August 22, 2014, to receive mental health and substance abuse treatment. Nicholas remained at Catalyst until August 2015, when he was successfully discharged to his home. Catalyst is considered a "Non-Participating Provider" under the Plan.[4]

C.   CLAIM PROCESS

On September 30, 2014, Nicole contacted Coventry to request information to seek reimbursement for Nicholas' treatment at Catalyst and she was directed to MHNet's website to obtain the necessary form.

---

[1] R. at 15. The Joint Administrative Record consists of documents AET000001 to AET003667. The Court will refer to the relevant record citation as R.__.

[2] *Id.* at 24. There is no dispute that the Plan provided coverage under a Mental Disorder and Substance-Related Disorder Rider. *Id.* at 80–82.

[3] *Id.* at 24.

[4] *Id.* at 915.

On November 10, 2014, MHNet denied Plaintiffs' claim, stating that the services were not authorized and the charged amount was above the payable rate.[5]

On April 3, 2015, Nicole submitted a first level appeal. On May 28, 2015, Coventry denied Nicole's first level appeal. Coventry noted that Catalyst was an out-of-network provider and prior authorization was required. Because Plaintiffs had failed to obtain prior authorization, the request for coverage was denied.

On June 22, 2015, Nicole submitted a second level appeal. As part of that appeal, Nicole requested a retrospective review. On January 13, 2016, Coventry upheld the denial, concluding that residential treatment was not medically necessary.

On May 11, 2016, Nicole submitted a request for an independent review. On June 28, 2016, the independent review organization upheld the denial based on lack of medical necessity.

## II. STANDARD OF REVIEW

In an ERISA case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor."[6]

The parties dispute the appropriate standard of review. A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

---

[5] *Id.* at 142–44.

[6] *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (quoting *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 235 (1st Cir. 2006)).

3

construe the terms of the plan."[7] However, "[w]hen a plan 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' we review the decision for abuse of discretion."[8]

In this case, there is no dispute that the Plan provides the plan administrator discretion to interpret the terms of the plan and determine eligibility for benefits.[9] Thus, generally a deferential standard would apply. However, Plaintiffs argue that a de novo standard of review is called for in this case because of certain procedural irregularities. The Court need not resolve this dispute. Under either standard, Plaintiffs' claim fails.

### III.  DISCUSSION

The Plan required Plaintiffs to obtain preauthorization for Nicholas' treatment at Catalyst.[10] The Plan makes clear that it is the Plan participant's responsibility to ensure that prior authorization has been obtained.[11] Further, where, as here, the Plan provides coverage under a Mental Health and Substance-Related Disorder Rider, "Prior Authorization must be obtained."[12] The Plan goes on to state that failure to obtain prior authorization when required "may result in reduction or denial of benefits."[13] Similarly, the Summary of Benefits Coverage

---

[7] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[8] *Holcomb v. UNUM Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (quoting *Fought v. UNUM Line Ins. Co. of Am.*, 379 F.3d 997, 1002–03 (10th Cir. 2004)).

[9] R. at 62–63.

[10] *Id.* at 22–24.

[11] *Id.* at 22, 23.

[12] *Id.* at 24.

[13] *Id.*

states that mental/behavioral health inpatient services and substance use disorder inpatient services are not covered without preauthorization.[14]

Here, there is no dispute that Plaintiffs failed to obtain prior authorization as required by the Plan. Therefore, Coventry had the authority to deny benefits, which it did. Plaintiffs argue that the use of the word "may" did not mandate the denial of benefits. While this is true, by the same token, use of the word "may" does not require the award of benefits. Rather, this provision gave Coventry the option to deny benefits where prior authorization was not obtained and it exercised that option to deny benefits, which it could do under the terms of the Plan.

Plaintiffs further argue that the Plan allows for coverage even when prior authorization is not obtained unless Coventry determines the services were not medically necessary. In support, Plaintiffs rely on a single provision of the Plan. Section 6.5.8 states:

> Non-Participating Providers do not agree to participate in Our Utilization Management Program. It is always Your responsibility to ensure required Prior Authorizations and verification of benefit Coverage are obtained. If a required Prior Authorization is not obtained, and We determine that a service otherwise Covered is not Medically Necessary, Your Participating Provider may bill You for the entire amount of those services.[15]

Based upon this language, Plaintiffs argue that the Plan required coverage, despite the lack of prior authorization, unless Nicholas' treatment was not medically necessary. Because Plaintiffs contend his treatment was medically necessary, they argue that Coventry should have provided coverage.

---

[14] *Id.* at 89.
[15] *Id.* at 22.

The Court cannot accept Plaintiffs' interpretation of this provision. While § 6.5.8 begins with a statement about non-participating providers, its statement about determining medical necessity relates only to participating providers. As set forth above, § 6.5.8 states: "If a required Prior Authorization is not obtained, and We determine that a service otherwise Covered is not Medically Necessary, Your *Participating Provider* may bill You for the entire amount of those services."[16] Thus, only where prior authorization is not obtained for treatment from a participating provider is it necessary to determine medical necessity. As stated, there is no dispute that Catalyst is not a participating provider.

Even if the Court were to accept Plaintiffs' reading of § 6.5.8, Plaintiffs' argument ignores the more specific requirement to obtain prior authorization when the Plan provides coverage under a Mental Health and Substance-Related Disorder Rider.[17] Where there is such a Rider, the Plan states in no uncertain terms that prior authorization must be obtained and the failure to do so may result in a denial of benefits.[18] In this case, Plaintiffs' Plan provided coverage under a Mental Health and Substance-Related Disorder Rider. Therefore, prior authorization was required by the Plan. Since Plaintiffs failed to obtain such authorization, Coventry could deny benefits and its decision to do so must be upheld.

---

[16] *Id.* (emphasis added).

[17] *See* Restatement (Second) of Contracts § 203 (stating that in the interpretation of contracts specific terms are given greater weight than general language); *see also US Airways, Inc. v. McCutchen*, 569 U.S. 88, 102 (2013) (stating that "[c]ourts construe ERISA plans, as they do other contracts"); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 585 (1st Cir. 1993) ("When interpreting the provisions of an ERISA benefit plan, we use federal substantive law including the common-sense canons of contract interpretation.") (internal quotation marks omitted).

[18] R. at 24.

## IV.  CONCLUSION

It is therefore

ORERED that Defendants' for Summary Judgment (Docket No. 20) is GRANTED.  It is further

ORDERED that Plaintiffs' Motion for Summary Judgment (Docket No. 22) is DENIED.

DATED this 18th day of June, 2019.

BY THE COURT:

_____
Ted Stewart
United States District Judge